IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


LORETTA MULDREW,                              )
                                             )
                                             )
              Plaintiff,                     )
       v.                                    )       Civil Action No. 14-27 Erie
                                             )       Judge Nora Barry Fischer
JOSEPH MCCORMICK CONSTRUCTION CO.,           )
INC., and OWEN MCCORMICK,                    )
                                             )
                                             )
              Defendants.                    )


## MEMORANDUM OPINION

### I.    INTRODUCTION

On January 29, 2014, Plaintiff Loretta Muldrew ("Plaintiff")[1] initiated this civil action

against her former employer, Joseph McCormick Construction Co. ("McCormick

Construction"), and Owen McCormick ("McCormick"), the company's owner (collectively,

"Defendants"). In her amended complaint, Plaintiff asserts that she suffered discrimination,

retaliation, and wrongful termination on account of her race, gender and disability in violation of

Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Americans with

Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and 42 U.S.C. § 1981 ("Section 1981").

She also alleges that the Defendants violated the Equal Pay Act, 29 U.S.C. § 206, the

Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"), and the Pennsylvania Wage

Payment and Collection Law, 42 P.S. § 260.7 ("WPCL").

---

[1] At a status conference on August 4, 2014, Plaintiff's counsel informed the Court that Plaintiff has recently passed away. Counsel indicated that he will substitute her daughter as the plaintiff this action once she is formally appointed as the administratrix of her mother's estate.

Presently pending before the Court is Defendants' Motion to Dismiss (Docket No. 17), Plaintiff's Brief in Opposition (Docket No. 19), and Defendants' Reply Brief (Docket No. 20). For the reasons set forth below, Defendants' Motion to Dismiss will be GRANTED.

## II. FACTUAL BACKGROUND

On June 5, 2005, Plaintiff, an African-American female, commenced employment with Defendant McCormick Construction as a flagger and general laborer. (Docket No. 14 at ¶ 3). During her tenure with McCormick Construction, Plaintiff was paid between $7.45 and $9.00 per hour. (*Id.*).

At some unspecified time during her employment, Plaintiff and another African-American co-worker complained to McCormick and Bob Quinn, their supervisor, that they were being treated in a discriminatory fashion. (*Id.* at ¶¶ 5, 17). Specifically, they asserted that they were not being afforded opportunities to work on well-paying jobs, they were not given adequate training, and that white co-workers were being paid starting wages of $10.00 to $12.00 per hour. (*Id.* at ¶¶ 5, 12, 18). Plaintiff also contends that she was not given as many bathroom breaks as her male co-workers. (*Id.* at ¶¶ 4, 12). Plaintiff's amended complaint does not indicate whether (or in what manner) McCormick and/or Quinn responded to these complaints.

In November 2011, Plaintiff went on medical leave for cancer treatment. (*Id.* at ¶¶ 7, 21). At some point thereafter, Plaintiff moved to Arkansas, where she resided until her death, to receive chemotherapy treatment. (*Id.* at ¶ 7). Although it is less than clear from her amended complaint, Plaintiff also appears to suggest that she suffered from a disability prior to her diagnosis with lung cancer. (*Id.* at ¶ 22). However, Plaintiff has not provided the name of this disability or any facts supporting its existence, other than to suggest that she had two previous heart attacks and generally had trouble breathing, walking and working. (*Id.* at ¶ 23).

On April 3, 2013, Defendants sent Plaintiff a letter informing her that her employment had been terminated because she had been on medical leave for over 18 months and could not provide the company with a return to work date. (*Id.* at ¶ 7). As a result of her termination, Plaintiff lost her only source of insurance coverage. (*Id.*).

On November 5, 2013, Plaintiff submitted an Intake Questionnaire to the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 9; Docket No. 11-1). In that document, apparently filed with the assistance of counsel, Plaintiff failed to provide any contact information or other details about her employer other than to write the name "Oewns" as the owner of the business. (Docket No. 11-1 at 1). In response to a series of questions concerning her basis for alleging discrimination, Plaintiff generally stated that she "was treated different at the work place" because of her race, sex and disability, that "white coworkers were treated better" with respect to breaks, training, and pay, and that she has lung cancer. (*Id.* at 2, 7). However, Plaintiff did not supply any specific facts in support of her allegations. (*Id.*). She also never filed a formal charge of discrimination with the EEOC and, consequently, has not received a right-to-sue letter. (Docket No. 19 at 2-3).

III.    PROCEDURAL HISTORY

As noted above, Plaintiff filed her initial complaint on January 29, 2014. (Docket No. 1). Defendants moved to dismiss that complaint on March 18, 2014, arguing that Plaintiff's claims had not been administratively exhausted at the agency level and otherwise failed to state a claim for relief. (Docket No. 7). Plaintiff responded by filing a substantively identical amended complaint on May 1, 2014. (Docket No. 14). That pleading is the subject of the instant motion to dismiss.

## IV.   LEGAL STANDARDS

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id*. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). The determination as to whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 556). In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3rd Cir. 2009). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**V.     DISCUSSION**

In her amended complaint, Plaintiff maintains that she suffered discrimination, retaliation, and wrongful termination on account of her race and her disabilities.  She also contends that white co-workers were paid higher wages than she was for the same work.  Defendants, in their Motion to Dismiss, argue that Plaintiff has not exhausted her Title VII and ADA claims by filing a charge with the EEOC and that her remaining claims fall short of the pleading requirements of *Iqbal* and *Twombly*.  The Court will discuss each of these contentions, in turn.

**A.  Exhaustion (Counts I, IV and V)**

Before she may bring a Title VII action in federal court, a plaintiff must exhaust her administrative remedies by presenting her claims to the EEOC and obtaining a right-to-sue letter.  *See* 42 U.S.C. §§ 2000e-5(b), (f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).  The same exhaustion requirement applies to allegations of discrimination brought pursuant to Title I of the ADA.  *See* 42 U.S.C. § 12117(a); *Williams v. East Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3rd Cir. 2010) ("Before filing a complaint, a plaintiff alleging discrimination under the ADA must exhaust her administrative remedies by filing a charge with the EEOC.").  Thus, "[a] complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC . . ."  *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3rd Cir. 1997) (quoting *Hornsby v. United States Postal Service*, 787 F.2d 87, 90 (3rd Cir. 1986)).

In the instant case, Plaintiff concedes that she never filed a formal charge with the EEOC and has not received a right-to-sue letter.  (Docket No. 19 at 2-3).  Consequently, Defendants

maintain that Plaintiff's Title VII and ADA claims must be dismissed for failure to state a claim. *Robinson*, 107 F.3d at 1022; *see also Slingland v. Donahoe*, 542 F. App'x 189, 191 (3rd Cir. 2013) (noting that a plaintiff's failure to exhaust her discrimination claims before the EEOC provides "grounds for dismissal on a Rule 12(b)(6) motion"). Moreover, because an EEOC charge must generally be filed within 300 days of the allegedly "unlawful employment practice," Defendants contend that Plaintiff's claims are now time-barred, rendering any request for amendment futile. *See* 42 U.S.C. § 2000e-5(e)(1).

In response, Plaintiff argues that the Intake Questionnaire that she submitted to the EEOC should be deemed adequate to exhaust her administrative remedies. (Docket No. 19 at 2-3). This issue was recently discussed by the United States Supreme Court in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). In *Holowecki*, the Supreme Court held that an employee's timely submission of an Intake Questionnaire to the EEOC can be considered a "charge" for exhaustion purposes if it satisfies two requirements. First, the filing must be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 401. Secondly, it must contain all of the factual information required by the pertinent EEOC regulations, including "the name of the charged party" and an allegation of discrimination. *Id.* at 402.

With respect to the first requirement, the Court notes that the version of the Intake Questionnaire filled out by Plaintiff requires claimants to check a box indicating whether they want the EEOC to take remedial action. This box, commonly referred to as "Box 2," states:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.

(Docket No. 11-1 at 6). The Third Circuit has recently held that an employee "who completes the Intake Questionnaire and checks Box 2 unquestionably files a charge of discrimination." *Hildebrand v. Allegheny County*, -- F.3d --, 2014 WL 2898527, *12 (3rd Cir. 2014). A review of Plaintiff's Intake Questionnaire confirms that she did check Box 2, satisfying the first *Holowecki* requirement. (Docket No. 11-1 at 6). *See Holowecki*, 552 U.S. at 401.

With respect to the second *Holowecki* requirement, however, Plaintiff's Intake Questionnaire fails to provide even the most basic information required by EEOC regulations. For example, 29 C.F.R. § 1601.12(a) provides that a charge of discrimination should contain "[t]he full name, address and telephone number of the person making the charge," "[t]he full name and address of the person against whom the charge is made," "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices," "the approximate number of employees of the respondent employer," and a statement indicating whether proceedings have also been commenced before a state or local agency. 29 C.F.R. § 1601.12(a). Section 1601.12(b) provides that a charge that fails to provide the information requested in subsection (a) will still be deemed sufficient so long as the agency receives "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).[2]

In the instant case, Plaintiff's Intake Questionnaire completely failed to identify her employer, the target of her allegations of discrimination. (Docket No. 11-1 at 1). Indeed, the entire subsection of the questionnaire in which the name of the employer must be supplied is completely blank, with two exceptions: the area code "814" is listed under "Phone" and the misspelled name "Oewns" is listed under "Human Resources Director or Owner Name." (*Id.*).

---

2 The Intake Questionnaire itself indicates that it "may serve as a charge if it meets the elements of a charge" as set forth in 29 C.F.R. § 1601.12(b).

This mistake is particularly egregious in light of Plaintiff's indication that two attorneys assisted her in filling out the form. (*Id*. at 6).

The requirement that the EEOC be provided with the name of the party against whom the allegation of discrimination is made is not a mere technicality. The very purpose of the exhaustion requirement is to "put[] the employer on notice that a complaint has been lodged against him," *Bihler v. Singer Co*., 710 F.2d 96, 99 (3rd Cir. 1983), and to "afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3rd Cir. 1996). The agency cannot perform this function if it is not provided with, at a minimum, the name of the party accused of wrongdoing. *See Holowecki*, 552 U.S. at 401 (claimant must provide the "name of the charged party"); *see also Hildebrand*, 2014 WL 2898527 at *12 (dismissing claims against a defendant for failure to exhaust because that defendant was not named in the Intake Questionnaire); *Harter v. County of Washington*, 2011 WL 6116461, *6 (W.D. Pa. Dec 8, 2011) (holding that plaintiff had failed to exhaust her administrative remedies as to a party not named in her EEOC filings). As noted by the Seventh Circuit:

> To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant []. The short statutes of limitations in employment cases have a purpose – both backpay obligations and the difficulty of reintegrating a terminated worker into the workforce grow with each day that passes before an employment dispute is resolved – and it is ill served when the employer does not receive prompt notice of the dispute.

*Early v. Bankers Life and Cas. Co*., 959 F.2d 75, 80-81 (7th Cir. 1992).

In short, because Plaintiff's Intake Questionnaire failed to provide the EEOC with any identifying information concerning the party accused of misconduct, it failed to satisfy the requirements of 29 C.F.R. § 1601.12(b) and cannot be deemed a "charge" for purposes of

exhaustion. Given the current state of the record, Plaintiff's Title VII and ADA claims must be dismissed.[3] *See, e.g.*, *Robinson*, 107 F.3d at 1022.

The Court reaches the same conclusion with respect to the PHRA claim alleged in Count V of Plaintiff's amended complaint. It is well-established that a plaintiff attempting to bring a PHRA claim must first file an administrative complaint with the Pennsylvania Human Relations Commission within 180 days of the alleged act of discrimination. *Mandel v. M & O Packaging Corp.*, 706 F.3d 157, 164 (3rd Cir. 2013). Plaintiff acknowledges that she has not complied with this requirement. (Docket No. 19 at 9). *See also Mandel*, *706 F.3d at 164* ("[T]he mere filling out of an EEOC charge information questionnaire cannot be in itself sufficient to comply with the PHRA.").

### B. Failure to State a Claim

In addition to their exhaustion challenge, Defendants contend that Plaintiff has failed to plead sufficient facts to state a claim as to any of her remaining allegations. Each will be discussed in turn.

### 1. Section 1981 - Wrongful Termination/Retaliation (Counts II and III)

42 U.S.C. § 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a). In Count II of her complaint, Plaintiff generally contends that she is entitled to relief under Section 1981 because she was "unfairly, unlawfully and arbitrarily terminated" from her employment. (Docket No. 14 at ¶ 13-15). In Count III, Plaintiff maintains that she suffered retaliation in the

---

[3] In her brief in response, Plaintiff's counsel suggests that further interactions with the EEOC may have taken place and that a formal charge may have been finalized within 300 days of the date of her termination. (Docket No. 19 at 2). In light of this possibility, Plaintiff's non-exhausted Title VII, ADA and PHRA claims will be dismissed without prejudice. Defendants are free to reassert their exhaustion defense through a motion to dismiss or a motion for summary judgment following discovery of the complete EEOC file.

form of her termination following her complaints to management concerning unequal pay and other discrimination. (Docket No. 14 at ¶¶ 16-19).

The substantive elements of a claim under Section 1981 are "identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz., Inc.*, 581 F.3d 175, 181-82 (3rd Cir. 2009). In order to prevail on her wrongful termination claim, Plaintiff must establish that "[she] suffered an adverse employment action . . . under circumstances that could give rise to an inference of intentional discrimination" on the basis of her race. *Makky v. Chertoff*, 541 F.3d 205, 214 (3rd Cir. 2008). To establish a claim for retaliation, she must allege that: (1) she engaged in protected activity; (2) Defendants took an adverse employment action against her; and (3) that there was a causal connection between her participation in the protected activity and the adverse employment action. *McHugh v. New Jersey*, 604 F.3d 788, 798 (3rd Cir. 2010) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3rd Cir. 2006)).

As an initial matter, the Court observes that Plaintiff's amended complaint consists almost entirely of vague allegations and legal conclusions. This is best illustrated by simply reciting, *verbatim*, the three factual averments provided in support of her wrongful termination claim:

> 13. Plaintiff is an African-American.
>
> 14. Whether viewed as an enforceable employment contract or as having worked under an atwill [sic] employment relationship, the Defendant violated Plaintiff's legal and Constitutional rights to contract, including employment contracts, free of discrimination and to make and enforce contracts to enjoy the benefits, privileges, terms and conditions of contract on the basis of equality per section 1981 of the Civil Rights Act of 1866. Section 1981 provides for a private cause of action. An at-will employee may bring a cause of action under Section 1981.
>
> 15. On April 8, 2013, Plaintiff's professional and contractual relationship was unfairly, unlawfully and arbitrarily terminated by Defendant, thus depriving Plaintiff of her rights under the Americans

> with Disabilities Act, her insurance coverage and such other benefits to which she was entitled and derived from federal and state public mandates.

(Docket No. 14 at ¶¶ 13-15). In support of her retaliation claim, she offers similarly vague and conclusory language, concluding with the bald statement that "[t]here exists a causal connection between the Plaintiff's protected activity and the adverse employment action taken by the Defendant against the Plaintiff." (*Id*. at ¶ 19). These are precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that cannot suffice to state a claim under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In the absence of any specific factual assertions, each of Plaintiff's Section 1981 claims suffers from the same defect: her failure to plead any causal connection between her termination and her race. Even more strikingly, Plaintiff has failed to allege any facts suggesting that she was terminated *because of her race*. Rather, the clear inference to be drawn from her complaint as a whole is that she believes that she was terminated because of her cancer treatments and her inability to return to work, rather than because she is an African-American. (*See* Docket No. 14 at ¶¶ 15, 26).

To the extent that Plaintiff alleges that her termination resulted directly from her complaints to management, that claim is not supported by the factual averments in her amended complaint. For example, the temporal proximity between a protected activity and an adverse employment action may provide some inference of a causal connection. *See Jalil v. Avdel Corp*., 873 F.2d 701, 708 (3rd Cir. 1989). However, Plaintiff has failed to provide even an approximate date as to when her conversation with McCormick and Quinn took place. Moreover, even if that conversation took place as late as November of 2011 – the last month in which she actively

worked for Defendant – she was not terminated until April of 2013, over 18 months later.  Courts have consistently found causation lacking where there is a lengthy gap between the protected activity and the adverse employment action.  *See, e.g.*, *C.M. v. Bd. of Educ.*, 128 F. App'x 876, 883 (3rd Cir. 2005) (finding that a three month gap between protected activity and adverse employment action was too broad to support causation); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760-61 (3rd Cir. 2004) (two month gap did not support inference of causation); *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 50 (W.D. Pa. 2010) (seven month gap suggested lack of causation).

In addition to temporal proximity, the Third Circuit has opined that an inference of causation might arise where "the employer gave inconsistent reasons for terminating the employee" or where the employee alleges "intervening antagonism or retaliatory animus" following the protected activity.  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3rd Cir. 2000).  None of these factors appear on the face of the amended complaint.

Based on the foregoing, the Court concludes that Plaintiff has failed to allege any connection between her allegations of discrimination and her termination.  Consequently, her Section 1981 claims will be dismissed, without prejudice.

### 2.  Equal Pay Act (Count VI)

The Equal Pay Act provides that an employer may not "discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).  In order to establish a *prima facie* violation of the Equal Pay Act, a plaintiff must allege that employees of the opposite sex were

paid differently despite performing work that shared a "common core of tasks." *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3rd Cir. 1985).

As an initial matter, the majority of Plaintiff's allegations of wage disparity focus on the *race* of her co-workers, rather than their gender. For example, she contends that "she was hired at the rate of $7.45 per hour and . . . her *white* co-workers who performed similar jobs were paid at the beginning rate of $10.00 or $12.00 per hour." (Docket No. 14 at ¶ 5) (emphasis added). Throughout her complaint, she suggests that her "white" co-workers made more money than she did and that there was a "disparity in pay along lines of race." (Docket No. 14 at ¶ 18). However, the Equal Pay Act applies only to allegations of discrimination based on *gender. See, e.g.*, *Washington County v. Gunther*, 452 U.S. 161, 170 (1981) (noting that the Equal Pay Act applies to "wage differentials attributable to sex discrimination"); *Hopson v. Independence Broadcasting Co*., 1986 WL 229, *3 (E.D. Pa. June 12, 1986) ("[I]t must be noted that despite plaintiff's allegations of discrimination on the bases of sex and race, the Equal Pay Act is aimed at only discrimination on the basis of sex.").

Putting aside Plaintiff's allegations of race-based wage disparity, her Equal Pay Act claim is reduced to a handful of vague and conclusory statements similar to the following:

> The Plaintiff will show that the Defendant paid her less than it paid her male co-workers who performed jobs which required the same skill, effort and responsibility and were performed under the same working conditions, as her job.

(Docket No. 14 at ¶ 33). This is simply a recitation of the precise language of the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1). Courts have consistently held that this type of conclusory allegation cannot withstand a Rule 12(b)(6) challenge. *See, e.g*., *Arafat v. School Bd. of Broward Cnty*., 549 F. App'x 872, 873 (11th Cir. 2013) (dismissing plaintiff's "conclusory" and "formulaic" allegation that male employees were paid more for jobs "requiring equal skill, effort and

responsibility" as insufficient to state a claim under the Equal Pay Act); *Unger v. City of Mentor*, 387 F. App'x 589, 595 (6th Cir. 2010) (rejecting an Equal Pay Act claim where the complaint "cite[d] nothing more than the claim's legal elements, neglecting to provide any factual basis in support"); *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007-08 (2nd Cir. 1991) (deeming "too conclusory" the allegation that plaintiff "was not receiving equal pay for equal work"); *Suzuki v. State Univ. of New York Coll. at Old Westbury*, 2013 WL 2898135, *4 (E.D.N.Y. June 13, 2013) ("Bald allegations that male employees were paid more than female employees . . . will not survive a motion to dismiss."); *Sherrod v. Prairie View A & M Univ.*, 2011 WL 843936, *9 (S.D. Tex. Mar. 8, 2011) (granting motion to dismiss where plaintiff's "compensation claims are no more than a formulaic recitation of the elements of an equal pay cause of action").

### 3. WPCL (Count VII)

Finally, Plaintiff alleges that the Defendants violated the WPCL. However, Plaintiff has not alleged a single fact in support of this claim. Her only averment is that "Defendant failed to comply with state and possibly federal law mandates requiring full and timely payment of wages owed as a result of working on state and/or federally sponsored projects." (Docket No. 14 at ¶ 37). This allegation is insufficient to satisfy the requirements of *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### C. Leave to Amend

The Third Circuit has stated that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3rd Cir. 2008). The Court notes that Plaintiff has already amended her complaint once in response to a previous motion to dismiss in which the Defendants highlighted the same factual deficiencies that continue to plague

her allegations.  Plaintiff has now been placed on notice twice with respect to the defects in her pleadings and the requirements of *Iqbal* and *Twombly*.  This is particularly significant given that Plaintiff is represented by counsel in this action.

On the other hand, Plaintiff's responsive brief suggests the existence of additional facts that might properly be incorporated into a second amended complaint and requests an opportunity to amend on this basis.  (Docket No. 14).  Plaintiff's counsel reiterated this request during a telephonic conference held on August 4, 2014.  The Court also recognizes the inherent difficulty in pursuing this action given Plaintiff's illness and recent death.  Finally, the Court is aware that the Third Circuit has repeatedly endorsed a lenient standard with respect to curative amendments in civil rights cases.  *See, e.g.*, *Alston v. Parker*, 363 F.3d 229, 235 (3rd Cir. 2004).

After careful consideration of the foregoing factors, the Court will provide Plaintiff with another opportunity to amend.  Plaintiff is cautioned, however, that another failure to adequately support her claims with well-pleaded factual allegations will result in dismissal of this action with prejudice.[4]  Plaintiff is encouraged to closely examine her claims and honestly assess whether any can be supported with the requisite level of factual specificity.  If so, Plaintiff should file a second amended complaint on or before August 28, 2014.

---

[4] Under such a circumstance, the Court would likely conclude that further amendment would be inequitable and/or futile.  *See Alston*, 363 F.3d at 235 (leave to amend not required if amendment would be "inequitable or futile.").  Indeed, it appears that the delays resulting from her repeated attempts to state her claims may have already caused valuable evidence to grow stale or disappear entirely in the wake of her unfortunate death.

## VI.  CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss (Docket No. 17) is GRANTED.  Each of the claims asserted in Plaintiff's amended complaint is dismissed, without prejudice.  Plaintiff shall file a second amended complaint, if so desired, on or before August 28, 2014.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF:     All parties of record.
Date:       August 8, 2014