**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANEEKA BROWN, Administratrix of the Estate of LORETTA MULDREW, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 14-27 Erie Judge Nora Barry Fischer |
| JOSEPH MCCORMICK CONSTRUCTION CO., INC., and OWEN MCCORMICK, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiff Loretta Muldrew ("Plaintiff") initiated this civil action on January 29, 2014 against her former employer, Joseph McCormick Construction Co. ("McCormick Construction"), and Owen McCormick ("McCormick"), the company's owner (collectively, "Defendants").[1]   In the operative complaint, Plaintiff asserts that she suffered discrimination, retaliation, and wrongful termination on account of her race, gender and disability in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and 42 U.S.C. § 1981 ("Section 1981"). She also alleges that the Defendants violated the Equal Pay Act, 29 U.S.C. § 206, the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"), and the Pennsylvania Prevailing Wage Act, 43 P.S. § 165-5 ("PPWA").

---

[1] Upon Plaintiff's death, the administratrix of her estate, Shaneeka Brown, was substituted as the plaintiff in this action.  (Doc. No. 32).  For convenience, the Court continues to refer to Muldrew as "Plaintiff."

Presently pending before the Court is Defendants' Third Motion to Dismiss (Docket No. 33), Plaintiff's Brief in Opposition (Docket No. 38), and Defendants' Reply Brief (Docket No. 40).[2] For the reasons set forth below, Defendants' Motion to Dismiss will be GRANTED.

## II. FACTUAL BACKGROUND

Plaintiff, an African-American female, commenced employment with McCormick Construction as a flagger and general laborer on June 5, 2005 at a starting rate of $7.45 per hour. (Docket No. 31 at ¶¶ 7, 26(a)). Between 2005 and 2011, Plaintiff's hourly pay rate rose to $9.00 per hour. (*Id.*) Plaintiff contends that her white co-workers who performed similar jobs were paid at the beginning rate of $10.00 or $12.00 per hour. (*Id.* at ¶ 9, 26(b)). Plaintiff also contends that white co-workers were afforded more breaks, training, and opportunities to work on higher-paying jobs. (*Id.* at ¶¶ 9, 26(c)-(d)).

At some point during her employment, Plaintiff complained to McCormick and Robert Gwinn,[3] her supervisor, concerning her belief that she was being treated in a discriminatory fashion and that she was being exposed to toxic and hazardous conditions in the workplace. (*Id.* at ¶¶ 9–10). Plaintiff does not indicate when she lodged these complaints or how McCormick and/or Gwinn responded, if at all.

Plaintiff was diagnosed with lung cancer at some point in 2010 or 2011. (*Id.* at ¶¶ 16–17). On October 17, 2011, Plaintiff went on medical leave so that she could seek treatment for her cancer. (*Id.* at ¶¶ 16, 19).

On April 3, 2013, Defendants sent Plaintiff a letter informing her that her employment had been terminated because she could not provide the company with a date on which she would

---

[2] Plaintiff also filed a sur reply brief on March 12, 2015. (Doc. No. 41). As explained in the Court's Order on Motions Practice issued on March 19, 2014, "Sur reply briefs are not to be filed without leave of Court, and will be limited to five (5) pages, if leave is granted." (Doc No. 9). Because Plaintiff's sur reply exceeds the page limitation and was filed without leave of Court, it will be disregarded.
[3] Plaintiff refers to her supervisor as both "Gwinn" and "Quinn." (Docket No. 31 at ¶¶ 7, 9).

be able to return to work.  (*Id.* at ¶¶ 20, 42).  As a result of her termination, Plaintiff lost her only source of insurance coverage.  (*Id.*)  Around this same time, Plaintiff relocated to Arkansas to live with her daughter and continue to seek cancer treatment.  (*Id.* at ¶ 21).  She passed away on June 21, 2014.  (*Id.*)

### III.  PROCEDURAL HISTORY

Plaintiff initiated the instant action on January 29, 2014.  (Docket No. 1).  At that time, Plaintiff had filed an Intake Questionnaire with the United States Equal Employment Opportunity Commission ("EEOC") but had not yet received a right-to-sue letter.  (Docket No. 31 at ¶ 22).  Plaintiff's Intake Questionnaire, filed on November 14, 2013, failed to include contact information for her employer and did not state any factual basis for her claims.  (Docket No. 11-1).  Consequently, Defendants moved to dismiss the original complaint on the basis that Plaintiff's claims had not been administratively exhausted at the agency level and otherwise failed to state a claim for relief.  (Docket No. 7).

Plaintiff responded by filing a substantively identical Amended Complaint.  (Docket No. 14).  Defendants again moved to dismiss, arguing that Plaintiff's Amended Complaint had not cured any of the deficiencies identified in their prior motion.  (Docket No. 17).  The Court granted that motion on August 8, 2014, after concluding that Plaintiff had not administratively exhausted several of her claims and that her allegations fell short of the pleading requirements of *Iqbal* and *Twombley*.  (*Id.* at 14–15).  The Court noted, however, that Plaintiff's responsive brief appeared to suggest that "further interactions with the EEOC may have taken place and that a formal charge may have been finalized within 300 days of the date of her termination."  (*Id.* at 9 n.3).  In light of this possibility, the Court granted Plaintiff leave to file another amended complaint.  (*Id.* at 15).

On September 3, 2014, the EEOC issued Plaintiff a right-to-sue letter. (Docket No. 31 at ¶ 22; Docket No. 31-1). Plaintiff filed her Second Amended Complaint shortly thereafter. (Docket No. 25). That pleading utterly failed to comply with Rule 10(b) of the Federal Rules of Civil Procedure, prompting Defendants to file a motion to strike. (Docket No. 26). The Court granted that motion on November 20, 2014, and ordered Plaintiff to amend her complaint yet again. (Docket No. 30).

On December 5, 2014, Plaintiff filed her Third Amended Complaint. (Docket No. 31). Defendants filed the instant motion to dismiss on December 19, 2014. (Docket No. 33). After Plaintiff initially failed to respond, this Court ordered Plaintiff to show cause as to why the action should not be dismissed. (Docket No. 35). Plaintiff's counsel responded to the show cause order by explaining that he believed Defendant's motion to be "without merit" and that it "did not warrant a Response." (Docket No. 38). Nevertheless, Plaintiff filed a responsive brief to the motion to dismiss on February 5, 2015. (Docket No. 37). Defendants filed a reply on February 23, 2015.[4] (Docket No. 40). This matter is now ripe for review.

## IV. LEGAL STANDARDS

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint,

---

[4] *See also* n.2, *supra*.

that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id.* at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). The determination as to whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 556). In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## V. DISCUSSION

### A. Title VII (Count I)

In Count I of her Third Amended Complaint, Plaintiff attempts to state a disparate impact theory of workplace discrimination pursuant to Title VII. In broad brush, her allegations fall into three categories. First, she asserts that she was hired in 2005 at a starting rate that was several dollars per hour less than her white co-workers. Second, she contends that her white co-workers were treated more favorably throughout her employment in terms of wages, breaks, training, opportunities to advance, and protection from hazardous workplace environments. Although no dates or details are provided, these allegations necessarily refer to events that occurred between

2005 and 2011.[5]  Finally, she challenges the circumstances surrounding her ultimate termination in 2013.

At the outset, it is apparent that the vast majority of Plaintiff's allegations are barred by the applicable statutes of limitations.  Before a Plaintiff may bring a Title VII action in federal court, she must exhaust her administrative remedies by presenting her claims to the EEOC.  *See* 42 U.S.C. §§ 2000e-5(b), (f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).  In Pennsylvania, an EEOC claim must typically be filed within 300 days of the unlawful employment practice. 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d)(2); *Mikula v. Allegheny Cnty.*, 583 F.3d 181, 185 (3d Cir. 2009) ("Under Title VII, a claimant in Pennsylvania must file a discrimination charge with the EEOC within 300 days of an unlawful employment practice.").

In the instant case, the EEOC determined that Plaintiff's charge was filed on November 15, 2013.  Consequently, she has failed to administratively exhaust any unlawful employment practices that occurred prior to January 19, 2013, and any claims based on such conduct are necessarily time-barred.  This determination bars Plaintiff's allegations related to her wages, conditions of employment, lack of training, and failure to receive promotions.

In seeking to avoid this result, Plaintiff raises several arguments, none of which warrant extensive discussion.  First, she contends that her claims were "tolled as continuing violations" until her termination. (Docket No. 37 at 4).  However, it is well-settled that "discrete acts of discrimination" such as a failure to promote, wrongful termination, and denial of training cannot be aggregated under a continuing violation theory.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).  Moreover, even where allegedly discriminatory conduct does constitute a continuing violation, such as in a pay discrimination claim, the statute of limitations still "begins

---

[5] As noted above, Plaintiff's active employment as a flagger ended on October 17, 2011 when she went on medical leave.  After that time, she was no longer present in the workplace or receiving paychecks from Defendants.

to run on the date of the last occurrence of discrimination." *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (1992). Here, there is no question that Plaintiff received her last "discriminatory" paycheck over two years before she filed the instant lawsuit.

Plaintiff also suggests that her claims – including those based on employment actions taken during her period of active employment – did not accrue until her termination. Plaintiff appears to mistakenly believe that none of her claims could be brought until she was terminated. (*See* Docket No. 37 at 5) ("Plaintiff's accrued disparity in pay and benefits still remain unaddressed because . . . she had not yet been fired and therefore could not access the Court."). To the contrary, claims accrue "at the time of the *discriminatory act*." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasis in original).

Finally, Plaintiff appears to invoke the discovery rule, despite consistently acknowledging that she was aware of each of the asserted violations (and allegedly complained to management about many of them) at the time that they occurred. Because "a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong," these consistent acknowledgements belie Plaintiff's attempt to invoke the discovery rule. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994).

In short, none of Plaintiff's arguments concerning tolling and accrual has any merit. However, her claims related to her termination fall within the applicable 300 day period and can be considered timely.

In order to state a claim for wrongful termination, Plaintiff "has the burden of pleading sufficient factual matter that permits the reasonable inference that [she] was terminated or retaliated against because of her race, sex, and/or national origin." *Golod v. Bank of Am. Corp.*,

403 F. App'x 699, 700 (3d Cir. 2010) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318–19 (3d Cir. 2000)). "Such an inference could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus." *Id.* at 702 n.2.

Plaintiff has clearly failed to meet this burden. Her Third Amended Complaint simply states that "she was terminated from her employment in 2013 under circumstances which had a disparate treatment and impact on her ability to subsist." (Docket No. 31 at ¶ 26(e)). In addition to fundamentally misconstruing the nature of a disparate impact claim, this lone averment fails to create an inference that her race played any role in the company's decision to terminate her. Rather, the clear inference to be drawn from her complaint as a whole is that she believes that she was terminated because of her prior complaints to management and because her cancer treatments caused her to be unable to return to work, rather than because of her race. (*See* Docket No. 31 at ¶ 26(g)).

To the extent that Plaintiff alleges that her termination resulted directly from her complaints to management, she has failed to buttress that claim with any detail. For example, the temporal proximity between a protected activity and an adverse employment action may provide some inference of a causal connection. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). However, Plaintiff has failed to provide even an approximate date as to when her conversations with McCormick and Gwinn took place. Moreover, even if that conversation took place as late as November of 2011 – the last month in which she actively worked for Defendant – she was not terminated until April of 2013, over 18 months later. Courts have consistently found causation lacking where there is a lengthy gap between the protected activity and the adverse

employment action. *See, e.g.*, *C.M. v. Bd. of Educ.*, 128 F. App'x 876, 883 (3d Cir. 2005) (finding that a three month gap between protected activity and adverse employment action was too broad to support causation); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760–61 (3d Cir. 2004) (two month gap did not support inference of causation); *Yeager v. UPMC Horizon*, 698 F.Supp.2d 523, 50 (W.D. Pa. 2010) (seven month gap suggested lack of causation).

In addition to temporal proximity, the Third Circuit has opined that an inference of causation might arise where "the employer gave inconsistent reasons for terminating the employee" or where the employee alleges "intervening antagonism or retaliatory animus" following the protected activity. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000). None of these factors appear on the face of the Third Amended Complaint.

Based on the foregoing, the Court concludes that Plaintiff has failed to allege any connection between her allegations of discrimination and her termination. Her Title VII claim will be dismissed.

### B. Section 1981 (Counts II and III)

Title 42 U.S.C. § 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). In Count II of her Third Amended Complaint, Plaintiff contends that Defendants failed to compensate her at the same rate as her white co-workers. (Docket No. 31 at ¶ 31). In Count III, Plaintiff maintains that she suffered retaliation in the form of her termination following her complaints to management concerning unequal pay and other discrimination. (Docket No. 14 at ¶¶ 36–37).

Although not subject to exhaustion requirements, a claim brought pursuant to § 1981 is governed by either a two or four year statute of limitations, depending on the precise nature of

the claim. The applicable limitations period is determined by whether the claim became actionable under § 1981 before or after December 1, 1990.

"Prior to 1991, the race discrimination proscriptions contained within § 1981 were more narrow than those contained within Title VII." *Vereen v. Woodland Hills Sch. Dist.*, 2008 WL 794451, at *15 (W.D. Pa. Mar. 24, 2008). In *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the United States Supreme Court held that the remedies provided under § 1981, as originally enacted, were limited to claims based on "conduct at the initial formation of [a] contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson*, 491 U.S. at 179. In Pennsylvania, such claims are subject to a two year statute of limitations. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662 (1987); *McClendon v. Dougherty*, 2011 WL 677481, at *6 (W.D. Pa. Feb. 15, 2011) ("Plaintiffs § 1981 claim is subject to the Pennsylvania two year statute of limitations as it falls under the original provisions of § 1981.").

In 1991, Congress expanded the scope of § 1981 to provide a remedy for discriminatory acts relating to the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Jones v. GPU, Inc.*, 234 F.R.D. 82, 86–87 (E.D. Pa. 2005) (quoting Civil Rights Act of 1991, Pub.L. No. 102-166, Title I, § 101, 105 Stat. 1071 (1991)). In the meantime, Congress had enacted 28 U.S.C. § 1658, which established a four-year statute of limitations for all claims arising under federal statutes enacted after December 1, 1990. *Id.* Consequently, § 1981 claims based on the 1991 amendments, rather than the original provisions, are subject to a four year statute of limitations. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004) (quoting 42 U.S.C. § 1981(b)).

In Count II, Plaintiff primarily contends that Defendants violated her right "to be compensated on the basis of equality with her white co-workers." (Docket No. 31 at ¶ 31). The only fact that she offers in support of this claim is the allegation that "she was hired at the rate of $7.45 per hour and . . . her white co-workers who performed similar jobs were paid at the beginning rate of $10.00 or $12.00 per hour." (*Id.* at ¶ 9). Courts have observed that wage compensation claims arising from discrimination during the *formation* of a contractual relationship would have been actionable under the original provisions of § 1981 and are subject to the two year statute of limitations. *Vereen*, 2008 WL 794451, at *15 (noting that wage discrimination claims "in which the relevant discrimination occurred at the time of contract formation" may have been actionable under § 1981 prior to 1991); *Jones*, 234 F.R.D. at 87 ("Because plaintiffs' allegation that starting salaries were set in a racially discriminatory fashion was actionable under the original § 1981, it is not affected by § 1658, and a two-year statute of limitations . . . applies."). Consequently, Plaintiff's wage discrimination claim based on conduct at the initial formation of her employment contract is governed by the two year statute of limitations applicable to the original provisions of § 1981 and is time-barred.

In addition to claiming wage discrimination during the formation of her contract, Plaintiff generally alleges in Count II that "Defendants unlawfully deprived [her] of her contractual and constitutional rights to be properly trained, to be afforded equal opportunity to advance in the company, to be afforded protective gear and equipment with proper instructions to guard against occupational hazards in the workplace, to be afforded medical care on the basis of equality with her white co-workers and to be compensated equitably." (Docket No. 31 at ¶ 32). She avers that her "white co-workers Wendy, Dente, Sammy, Pete and Stephanie Dropchik were afforded greater opportunities to work in higher paying prevailing wage jobs and to advance in the

company than she was." (*Id.* at ¶ 26(c)). Plaintiff attributes these deprivations "to intentional racial discrimination." (*Id.* at ¶ 33). However, Plaintiff has not alleged a single fact to support her allegations. For example, she has not stated what work she was qualified to perform, what work she asked to perform, what training she was or was not provided, what promotions she sought, if any, or how her qualifications compared to those of her white co-workers. Nor has she indicated when any of the challenged conduct allegedly occurred. Instead, her Third Amended Complaint is replete with conclusory statements such as the following:

> Were the Decedent alive today, she would testify that her employment with the Defendant persistently involved disparate treatment between her white co-workers and herself as it related to disparity in pay, the lack of opportunity to participate in higher paying jobs, i.e., scale jobs, the inadequacy of training, the denial of breaks to attend to her personal bathroom needs, a privilege which was afforded male co-workers. [Counsel] knows these allegations to be credible because of the Decedent's averments. She stated as much in her original and First Amended Complaints, as well as what she stated in the completed EEOC Intake Questionnaire which she completed and signed on October 4, 2013.

(*Id.* at ¶ 8). Needless to say, this type of averment is insufficient to state a claim.

In Count III, Plaintiff contends that she was wrongfully terminated in retaliation for her complaints about discrimination in the workplace.[6] To establish a claim for retaliation, she must allege that: (1) she engaged in protected activity; (2) Defendants took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)).

In a prior opinion addressing the sufficiency of Plaintiff's First Amended Complaint, the Court dismissed Plaintiff's § 1981 claims after determining that they were based on nothing more than vague allegations and legal conclusions. Most strikingly, the Court noted that Plaintiff

---

[6] Defendant does not contend that this claim is time-barred.

had failed to plead the existence of a causal relationship between her race or her protected activity and her termination:

> In the absence of any specific factual assertions, each of Plaintiff's Section 1981 claims suffers from the same defect: her failure to plead any causal connection between her termination and her race. Even more strikingly, Plaintiff has failed to allege any facts suggesting that she was terminated *because of her race*. Rather, the clear inference to be drawn from her complaint as a whole is that she believes that she was terminated because of her cancer treatments and her inability to return to work, rather than because she is an African-American. (*See* Docket No. 14 at ¶¶ 15, 26).

(Docket No. 22 at 11). The Court also noted that Plaintiff could not establish any sort of causal connection between her protected activity and her termination because she had not supplied any of the dates on which the alleged protected activity took place. (*Id.* at 11–12).

Each of these failures continues to plague her Third Amended Complaint. For example, she states that "Defendants wrongfully and unlawfully deprived Plaintiff of her employment contractual benefits and terminated her without justification because she complained of and protested to defendant company Management regarding the violation of her contractual, legal and constitutional rights in the workplace." (*Id.* at ¶ 36). However, she has still not provided approximate dates for when those conversations with management took place, despite the Court's explicit admonition that such information was necessary to determine whether there was any temporal nexus between her protected activity and her termination. Instead, Plaintiff relies on the unsupported averment that "[a]ntagonism continued between the Plaintiff and the defendant Company even after the Plaintiff was placed on medical leave as of November 2011." (Docket No. 31 at ¶ 38). No other details are provided.

On balance, the Court finds that Plaintiff has again failed to plead any facts to connect her allegations of discrimination with her termination. Consequently, her retaliation claim must be dismissed.

**C. ADA (Count IV)**

In Count IV, Plaintiff alleges that Defendants violated the ADA by (1) failing to request a meeting with her in October or November of 2011 to discuss whether she could continue to perform her job with reasonable accommodations; (2) providing her with "fewer benefits and rights in the workplace than her non-disabled co-workers [with respect to] the inadequacy of training in the use of the protective gear in the toxic workplace"; and (3) depriving her of needed insurance coverage "after being terminated, if not before". (Docket No. 31 at ¶¶ 48, 50). She offers few supporting details concerning any of these averments.

Plaintiff's ADA claim is subject to the same exhaustion requirements that apply to Title VII claims. *See* 42 U.S.C. § 12117(a); *Williams v. E. Orange Cnty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010) ("Before filing a complaint, a plaintiff alleging discrimination under the ADA must exhaust her administrative remedies by filing a charge with the EEOC."). The majority of Plaintiff's allegations concern activity that occurred prior to 2011, when she was still actively employed by the Defendants. As with her Title VII claims, these allegations are time-barred.

The lone portion of Plaintiff's ADA claim that is not facially time-barred is her general allegation that Defendants stopped providing her with insurance coverage at some point "after being terminated, if not before." (Docket No. 31 at ¶ 50). However, she has not provided any facts from which the Court might infer that her insurance coverage was terminated for

discriminatory reasons. To the contrary, the Third Amended Complaint makes it clear that her insurance coverage ended because she was fired, rather than because she was disabled:

> Before her discharge, Plaintiff had gotten her insurance coverage through the Defendant Company. However, upon being terminated and being unable to procure coverage through COBRA, she was left uninsured.

(*Id.* at ¶ 20). Notably, Plaintiff does not contend that she was *terminated* based on her disability. (*See Id.* at ¶¶ 44–51). Her allegations are insufficient to state any sort of ADA claim.

### D. PHRA (Count V)

In Count V of her Third Amended Complaint, Plaintiff asserts that McCormick violated the PHRA by "aiding and abetting" the Title VII, ADA, and § 1981 claims described elsewhere in her complaint. A plaintiff attempting to bring a PHRA claim must first file an administrative complaint with the Pennsylvania Human Relations Commission within 180 days of the alleged act of discrimination. *Mandel v. M & O Packaging Corp.*, 706 F.3d 157, 164 (3d Cir. 2013). Plaintiff has already conceded that she has not complied with this requirement. (Docket No. 19 at 9). Moreover, even if Plaintiff's EEOC charge could somehow be construed as sufficient to exhaust her administrative remedies under the PHRA, Plaintiff does not allege a single act of discrimination that occurred within the 180 day period preceding that filing. As such, Plaintiff's PHRA claim, even if properly exhausted, is time-barred. *See, e.g.*, *Gharzouzi v. Nw. Human Servs. of Pa.*, 225 F.Supp.2d 514, 526 n. 8 (E.D. Pa. 2002) (noting that a plaintiff must file a charge of discrimination within 180 days with either the EEOC or PHRC to preserve state law claims under the PHRA).

### E. Equal Pay Act (Count VI)

In Count VI, Plaintiff contends that Defendants violated the Equal Pay Act by paying her at a rate that was less than what Defendants paid male employees. Such claims must ordinarily

be brought within two years of the date on which the cause of action accrued.[7]  "A claim under the Equal Pay Act accrues each time an employee receives a paycheck paying him or her less than an employee of the opposite sex who performs equal work."  *Prise v. Alderwoods Grp., Inc.*, 657 F.Supp.2d 564, 625 (W.D. Pa. 2009).

It is undisputed that Plaintiff went on medical leave in October, 2011, at which point she stopped receiving paychecks from Defendants.  The instant action was not filed until almost three years thereafter.  Accordingly, her Equal Pay Act claim is time-barred.[8]

### F.  PPWA (Count VII)

The PPWA creates a limited right of action for employees who are paid less than minimum wage while employed on public works projects.  *Ferguson Elec. Co., Inc. v. Foley*, 115 F.3d 237, 238 (3d Cir. 1997) (quoting 43 Pa.C.S.A. § 165-5).  However, claims pursuant to the PPWA must be instituted "within six months from the occurrence of the event creating such right."  43 Pa.C.S.A. § 165-13.  In the instant case, Plaintiff ceased actively working on any projects for Defendants in October, 2011, and did not file the instant action until almost three years later.  Her PPWA claim is untimely.

### G.  Leave to Amend

The Third Circuit has stated that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  Consistent with this principle, the Court has already permitted Plaintiff to file four separate complaints in an attempt to state a viable claim for relief.  In so doing, the Court explicitly cautioned Plaintiff that

---

[7] The lone exception to this requirement is where the cause of action arises out of a "willful" violation, a circumstance that Plaintiff does not allege. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

[8] Even if her Equal Pay Act claim was not time-barred, the only "fact" that Plaintiff offers in support of this claim is the conclusory allegation that she and a co-worker "were paid less than their male co-workers and cohorts." (Docket No. 31 at 15).

"another failure to adequately support her claims with well-pleaded factual allegations will result in dismissal of this action with prejudice." (Docket No. 22 at 15). The Court also encouraged Plaintiff to "closely examine her claims and honestly assess whether any can be supported with the requisite level of factual specificity." (*Id.*) Despite these instructions, Plaintiff continues to file pleadings based on nothing more than vague factual allegations and legal conclusions. Indeed, her Third Amended Complaint contains essentially the same allegations and details as her previous two complaints, each of which were stricken by the Court for failure to comply with the federal rules and *Iqbal*/*Twombly*. Her repeated failure to comply with the federal pleading standards suggests that Plaintiff simply does not possess the requisite facts to support any of her claims. Moreover, the vast majority of her allegations concern conduct that falls well outside of the applicable statutes of limitations. In light of the foregoing, the Court concludes that any further attempt at amendment would be inequitable and futile.

## VI. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss, (Docket No. 33), is GRANTED. This action will be dismissed with prejudice.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF:     All parties of record.
Date:     April 17, 2015